WILLING (BARINGS v.). See Case No. 985.

## Case No. 17,764.

WILLING et al. v. UNITED STATES.

[4 Dall. 374; 1 Wash. C. C. 125.] [1]

Circuit Court, D. Pennsylvania. May 7, 1804. [2]

SALE OF AMERICAN VESSEL—NECESSITY OF NEW REGISTRY.

An American registered vessel, while at sea, sold in part to resident citizens of the United States without a bill of sale reciting her registry, and without a new registry until her arrival at her home port, does not lose her privileges as an American vessel.

Error to the district court of the United States for the district of Pennsylvania.

Upon the record it appeared that this was an action upon a bond, dated the 16th of November, 1802, given by Willings and Francis and J. Miller, in the penal sum of 15,442 dollars to secure the payment of 7,720.41 dollars, being the amount of one half the duties payable on the cargo of the ship Missouri, on the 16th of May, 1803. The defendants pleaded (1) that the duties on the goods in question amounted only to 14,036.73 dollars, on account of one half of which (7,018.36 dollars) the bond was given; and (2) payment. The plaintiff replied: (1) That the ship was an American registered vessel, owned by the defendants, when she sailed from Philadelphia to Canton on the 1st of December, 1800; that after her departure she was in part sold to Jacob G. Koch and others, on the 12th of February, 1801; that on making the sale the ship was not registered anew, nor was there any bill of sale executed reciting her register; that the goods were imported into the port of Philadelphia subsequent to the sale, on the 16th of November, 1802; that the amount of the duties was 15,440.92 dollars, for one half of which, payable in six months, the bond was given. (3) Non solverunt.

The defendants rejoined that they admit the sale to Koch and others, and the importation of the goods after such sale; but they aver that the ship was at sea at the time of the sale, having her register on board, and that it was not, therefore, in the power of the defendants to deliver it up at the time of the sale; that on her arrival, the 15th of November, the defendants did execute a bill of sale

---

[1] [Reported by A. J. Dallas, Esq. 1 Wash. C. C. 125, contains only a partial report.]

[2] [Reversing Case No. 16,727. Judgment of circuit court affirmed by supreme court in 4 Cranch (8 U. S.) 48.]

to Koch and others, reciting the register, and the captain delivered up the register to the collector, whereupon the ship was registered anew, as the joint property of the defendants, and Koch and others; that on the 7th of January, 1803, Koch and others resold to the defendants, and executed a bill of sale reciting the register, last mentioned; and that thereupon the ship was registered anew as the property of the defendants, whereby she continued an American registered vessel, not liable to foreign duties, and that the domestic duties only amounted to 14,036.73 dollars, &c. . The plaintiffs sur-rejoined that they admit the ship was at sea when she was in part sold to Koch and others, but aver that she was not registered anew, nor was there a bill of sale, reciting the register, at the time of the sale, nor at the time of her arrival; that they, also, admit that the captain delivered to the collector, the register of the ship at the time of his arrival, but they insist that it was long after she had been in part sold, without being registered anew, &c.; that the registry of the ship, on the 22d of December, 1802, in the name of Koch and others and the defendants, was made after the resale by Koch and others to the defendants, when Koch and others had ceased to own any part; and that they admit that Koch and others, having previously resold, did, on the 24th of January, 1803, deliver up the register in their names, and the ship was then registered anew, as the exclusive property of the defendants, but they insist that at the time of the actual resale by Koch and others (15th November, 1801), she was not registered anew, nor did they then execute a bill of sale reciting the register; that the registry of the 24th of January, 1803, was made, under colour of a bill of sale executed by Koch and others to the defendants, long after the resale, and they had ceased to have any interest in the ship; and that at the time of the sale in part to Koch and others, of the resale by them to the defendants, of the arrival of the ship in the port of Philadelphia, and of her entry, she had ceased to be deemed a ship of the United States. The defendants demurred, generally, to the sur-rejoinder; and the plaintiffs joined in demurrer.

The general question, upon the demurrer, was whether a registered vessel of the United States, being sold, in part, to resident citizens of the United States, while she was at sea, without a bill of sale reciting the register, and without being then registered anew, was liable, with her cargo, to the payment of foreign, or only to the payment of domestic, tonnage and duties, on her return to a port of the United States? And the argument rested chiefly upon the terms and meaning of the 14th section of the registering act, which is in these words: "And be it further enacted, that when any ship or vessel, which shall have been registered pursuant to this act, or the act hereby, in part repealed, shall, in whole or in part, be sold, or transferred to a citizen or citizens of the United States; or shall be altered in form or burthen, by being lengthened or built upon, or from one denomination to another, by the mode or method of rigging or fitting, in every such case the said ship or vessel shall be registered anew, by her former name, according to the directions herein before contained, (otherwise she shall cease to be deemed a ship or vessel of the United States) and her former certificate of registry shall be delivered up to the collector to whom application for such new registry shall be made, at the time, that the same shall be made, to be by him transmitted to the register of the treasury, who shall cause the same to be cancelled. And in every such case of sale or transfer, there shall be some instrument of writing, in the nature of a bill of sale, which shall recite at length, the said certificate, otherwise the said ship or vessel shall be incapable of being so registered anew. And in every case, in which a ship or vessel is hereby required to be registered anew, if she shall not be so registered anew, she shall not be entitled to any of the privileges or benefits of a ship or vessel of the United States. And further, if her said former certificate of registry shall not be delivered up as aforesaid, except where the same may have been destroyed, lost, or unintentionally mislaid, and an oath or affirmation thereof shall have been made, as aforesaid, the owner or owners of such ship or vessel shall forfeit and pay the sum of five hundred dollars, to be recovered, with costs of suit." In the district court, judgment was rendered for the United States. [Case No. 16,727].

Mr. Dallas, U. S. Dist. Atty.
Rawle & Lewis, for plaintiffs in error.

For the United States. The general question is, whether the cargo of the ship Missouri was liable to the payment of foreign duties, on the 15th of November, 1802, when she was returned to the port of Philadelphia. It will be attempted to maintain the affirmative on two grounds: (1) That she had not a register in force. (2) That she was not then entitled to be registered anew.

(1) The discussion does not turn upon the fact of American ownership, but upon the legal existence of an American register. The object of the law was to secure to American citizens, the exclusive benefit of American tonnage and navigation. The means employed were directed, to ascertain, first, the fact that the vessel was American built; and, secondly, to trace every change of ownership, in whole or in part. And the means being suited to the object, all theories, all arguments ab inconvenienti, must yield to the positive terms of the law, in this instance, as in numerous other instances of forfeiture under the navigation and revenue laws. In order to ascertain the changes, or transfers, of property, considerations respecting the transfer to an alien, whether the vessel was in port or at sea, on the one hand, and, on the other hand, respect-

ing the transfer to a citizen, whether the vessel was in port or at sea, naturally occurred. Now, no American vessel, wherever she may be, if sold to an alien, can be registered anew. In England a bill of sale to an alien is void, without the consent of three fourths of the owners endorsed upon the certificate. In America there is no such provision, but still, upon a clandestine sale of a part owner, the innocent owners are protected to the amount of their interest in the vessel. 4 Laws [Folwell's Ed.] 11 [1 Stat. 523]; Abb. 45; 13 Geo. III. c. 26; 2 Laws [Bior. & D.] p. 131, §§ 7, 16, 17 [1 Stat. 145]; Abb. 30; 26 Geo. III. c. 60, § 15. Again, an American vessel, if sold even to a citizen, must, upon every sale, in whole or in part, be registered anew, the old register must be surrendered, the bill of sale must be in writing, containing a recital of the register, and on every entry at a port of the United States the mesne transfers must be disclosed. 2 Laws [Bior. & D.] 131, §§ 14, 17 [1 Stat. 145]. In England a distinct provision is made for cases in which vessels are sold, when in port, and for cases in which they are sold while at sea. For the former it is required that an endorsement shall be made on the register, or that the vessel be registered anew, at the option of the remaining owners, without which the sale is void. 7 & 8 Wm. III. c. 22, § 21; 34 Geo. III. c. 68, §§ 15, 21. And for the latter, it is required, in order to render the sale valid, that the bill of sale shall recite the register; that a copy of the bill of sale be delivered to the commissioners; that notice of the transfer be given at the ship's port; and that the endorsement be made on the register, when the ship returns. Id. But in America, the only provision in the case of a sale of a vessel at sea is contained in the 14th section of the law. 2 Laws [Bior. & D.] 131 [1 Stat. 145], while the sale of a vessel in port is anxiously guarded as well by that section, as by the 14th, 11th, and 12th sections. The registering bond does not embrace the case of a sale while the vessel is at sea; the 17th section only requires a disclosure of the fact, without declaring any consequence; and, in short, it is only in the 14th section that any provision is made for a formal bill of sale, for a surrender of the old register, or for the taking out of a new one. And yet the policy which prescribes such guards against unlawful transfers, while a vessel is in port, operates more forcibly in the cases of a transfer, while a vessel is at sea. The legislative jealousy of sales abroad is manifested, indeed, by the provision, which disqualifies citizens, resident in foreign countries (with a few exceptions), from being holders of American registered vessels. 2 Laws [Bior. & D.] 132, § 2; Id. 134, § 4 [1 Stat. 145]. Then, if the policy of the law is general, so are the words of the 14th section of the act, embracing every sale of a vessel, in whole or in part, at home or abroad; and, to preserve the American privileges of the vessel, the requisites of the section are a new

register on the sale, a surrender of the old register, and a bill of sale, reciting the register. On the sale of the Missouri to Koch and his associates, her old register ceased to be in force. A new one might be obtained, provided, at the time of applying for it, the old one was surrendered, and a bill of sale, in due form, was produced: but, after vacating the old register by a sale, the ship ceased to be privileged, until a new register was obtained. A formal bill of sale is a sine qua non, in every case; and, emphatically, it is necessary in the case of a sale, while a vessel is at sea, as the act of congress provides no other guard against an unlawful transfer. Besides, why should the 17th section merely require, upon the entry of a vessel from abroad, a disclosure of the fact, whether there has been any antecedent change of ownership, if it was not to bring the case within the 14th section of the act? And if a vessel sold at home is subject to the rigor of all the regulations of the 14th section, on what principle can a vessel sold abroad pretend to an exemption? Is it not more within the policy, spirit, and language of the law to say that the vessel sold abroad shall, like the vessel sold at home, lose her privilege upon the sale; and, as the danger of unlawful sales is greater abroad than at home, she shall remain unprivileged, until the actual renewal of her register? In illustration of the argument on this point, the following authorities were cited: 3 Term R. 406; 3 Brown, Ch. 571; s. c. 5 Term R. 710; 7 Term R. 306; 2 East, 399; 1 Bos. & P. 484.

(2) Nor was the Missouri even entitled to be registered anew, at the time of her return to the port of Philadelphia. There did not then exist a bill of sale, reciting the register; and the recital might as easily be made from the record at the customhouse as from the certificate of registry carried with the vessel.

The construction now contended for has uniformly prevailed in the treasury department, and contemporaneous construction ought to be regarded in deciding upon a doubtful law. Parker, Exch. 215. Legislative construction is, also, in favor of the United States, for the very case of a vessel sold while at sea has been specially introduced into the system. 6 Laws [pub. by authority] 223, § 3 [2 Stat. 209]. The power to remit the foreign duties incurred by such sale has been vested in the secretary of the treasury, and legislative construction of a legislative act, where the words are doubtful, ought to be conclusive. Parker, Exch. 217.

For Willings and Francis. In the present case there is no suggestion of alien ownership, or mala fides of any kind. The meaning of the legislature, should, therefore, be perfectly clear, before a decision inflicting, in effect, a heavy penalty, on the plaintiffs in error, is pronounced. The general policy of the law is to give an advantage to the American citizen; and, if its language is at all obscure, he is entitled to the most beneficial

interpretation. In this view of the controversy, the recapitulation of a few plain rules will lead to a favourable result. (1) A vessel can have but one register at the same time. (2) The certificate of the registry is delivered to the master of the vessel, when he leaves the port, and must be deposited at the customhouse upon his return. (3) The register remains in force, until it has been legally vacated or cancelled. (4) On a change of property, whether in whole or in part, a new register must be taken out; but no new register can be granted until the old one is surrendered. (5) The execution of a bill of sale, reciting the register, will not authorize the granting of a new register, without such surrender of the old one; but both must concur for that purpose. In no part of the law is a particular time prescribed, either for the execution of a bill of sale, or for the application for a new register. The 14th section amounts to nothing more than a declaration that a vessel, which has been sold, in whole or in part, shall not enjoy the American privileges, until she is registered anew; but the word "when" is not used as an adverb of time, nor does the section require that the vessel shall be registered anew, at the moment of the transfer. If, therefore, the bill of sale is executed, and the old register surrendered, when an application is first made for the enjoyment of American privileges, the words and policy of the law are satisfied; nor will the court go beyond the words of a law to create a forfeiture. 1 Bos. & P. 483; 19 Vin. Abr. 512, pls. 8, 9; 3 Term R. 401; 2 East, 399. The 17th section of the act, however, seems to fix the sense of the legislature; for, it obviously contemplates the disclosure of a transfer, while the vessel was at sea; and if the oath, which it prescribes, is truly taken, there is no forfeiture of her American character.

The doctrine contended for, on behalf of the United States, would introduce the greatest mischiefs. Could congress mean (in an act too, for the benefit of American tonnage and navigation) so to tie up the property in ships, that while they are at sea, they could not be sold, without incurring a forfeiture of their privileges? And is it consistent with justice and reason that the innocent shippers of a cargo on board an American vessel should be taxed with the payment of foreign duties, in consequence of successive transfers, to which they were neither parties nor privies? To these inconveniences the claim of foreign duties, in this case, adds the reproach that congress has required an impossibility; to wit, the immediate surrender of the register at the customhouse, while, in fact, it was on board of the vessel, at sea. As to a contemporary construction, it is not clearly and uniformly shown, in favour of the adverse doctrine; nor, if it were, could it prevail against the plain words and obvious meaning of the law. And, as to a supposed legislative construction of the act of

30 FED. CAS.—4

the 2d of March, 1803 (6 Laws [pub. by authority] 223, §§ 3, 4 [2 Stat. 209]), the act is merely affirmative; and even if it were declaratory of the legislative opinion, upon the previous state of the law, it could not be binding upon the judges, who must exercise their own judgments upon the law itself, independent of legislative exposition.

WASHINGTON, Circuit Justice. Although the pleadings, in this case, are lengthy, it has been agreed by both parties that the only question to be considered and decided, upon the whole record, is, whether the cargo, imported in the ship Missouri, is subject to the payment of foreign, or of domestic, duties? By the first section of the "Act concerning the registering and recording of ships, or vessels," passed on the 31st of December, 1792 [1 Stat. 287], it was provided that all vessels, registered pursuant to that law, should be denominated and deemed vessels of the United States; and all vessels of the United States are entitled, by law, to certain benefits and privileges denied to foreign vessels; so long as they shall continue to be wholly owned, and to be commanded, by a citizen or citizens of the United States. The ship Missouri was a duly registered vessel of the United States, and has always continued to be owned and commanded by citizens. She was, therefore, entitled to the benefits and privileges of her American character, when she arrived at the port of Philadelphia, in November, 1802; unless the partial sale made to American citizens, while she was at sea, deprived her of that character. Whether the transaction referred to produced such an effect, may, I think, be decided upon a joint consideration of the fourteenth and first sections of the registering act alone; though other sections will afford fair ground for reasoning and illustration. The fourteenth section is composed of several sentences, which must be distinctly, as well as collectively, considered, to ascertain the general meaning and result. The first sentence declares, that when a registered vessel is sold to a citizen, she shall be registered anew, by her former name, or she shall cease to be deemed a vessel of the United States, and that her former register shall be delivered up, at the time of applying for a new one. The second sentence declares, that in every such case of sale or transfer, there shall be a bill of sale, reciting at length the certificate of registry, otherwise the vessel shall be incapable of being registered anew. And the third sentence declares, generally, that in every case in which a vessel is required to be registered anew, she shall not be entitled to the privileges of a vessel of the United States, if she is not so registered.

It is difficult to conjecture, why, in the first sentence, the want of a new register should be declared, within a parenthesis, to deprive a vessel of her American character;

and that, in the third sentence, the same effect should be again declared, for the same cause. The latter declaration, however, is obviously tautology, for, if the former declaration can be said to have destroyed the privilege, eo instanti, when the sale was effected, it was useless and superfluous to repeat that the vessel should not, at any subsequent period, be entitled to enjoy it. The clear meaning, however, of both sentences, appears to be that the vessel should lose her American privileges, not simply upon the sale, but upon the neglect to obtain a new registry, after the sale. It is here, then, material to inquire in what manner, and on what terms, a new registry can be obtained? A bill of sale, reciting the old certificate of registry, must be produced to the collector. The old certificate of registry must, also, be surrendered. Now, though a bill of sale might be formally executed, in the absence of the ship. yet, the ship is bound, by law, to carry the certificate of her registry with her; and, consequently, it is impossible for her owner to surrender that instrument to the collector while she is herself at sea. If, however, the surrender of the certificate must be made, or the privilege must be lost, it is manifest that the law either requires the performance of an impossibility (which is not hastily to be imputed to the expression, and never to the intention of a law), or it prohibits, in effect, the sale of a ship at sea by one of our citizens to another.

There is no part of our navigation system that expressly avows this to be the intention of the legislature; and from what principle of public policy can it be inferred or presumed? The cargo is not liable to the claim of foreign duties, until an actual sale of the ship; and why should the owner of the cargo lose his privilege on account of the sale, which is an act of the owner of the ship alone? or be punished as for a fault, on account of the neglect of the owner of the ship to take out a new register; an omission which the owner of the cargo can neither prevent nor supply? Even, however, with respect to the ship, why, I repeat, should the privilege be lost, and her owner punished as for a fault, in omitting to deliver an instrument to the collector on shore, which the law directs to be kept on board her at sea? A consequence more injurious would not proceed from a sale to an alien; and yet, in the case of a sale to an alien, the act of congress declares the forfeiture of the American privilege in express words, as being incurred, eo instanti, on the sale; but no such declaration is made in the case of a sale to a citizen.

It appears to me that the 4th sentence of the 14th section of the act is also important, for it declares that "if the former certificate of registry shall not be delivered up as aforesaid, the owner, or owners, of the ship, or vessel, shall forfeit and pay the sum of $500." And thus, if the construction contended for by the attorney of the United States is correct, the law not only prohibits the sale of a vessel at sea by one citizen to another, on pain of forfeiting, at the moment of sale, the privileges of the vessel; but subjects the owner to a penalty, although it is physically impossible that he should do the thing, for the omission of which he is to be punished.

But an American vessel does not cease to be entitled to her privilege any more by the act of sale than by the act of altering her form or burthen; both cases being embraced by the provisions of the 14th section. Let us suppose, therefore, that the construction of the vessel should be altered, either in the port to which she belongs, or in any other port; would she lose her privilege before the owners could have an opportunity to apply for a new registry? And, if not, why should the privilege be lost before the opportunity occurs to make the application for a new registry, in the case of a sale? I can perceive no reason for a distinction.

As to the provisions of the 17th section, they are designed to compel a discovery of any transfers of a vessel, which may have been made during her absence from the port; in order that it might appear whether she continued to be a privileged vessel of the United States. If it appeared that she had been transferred to a foreigner, her privileges were forfeited from the moment of transfer; and if it appeared that she had been sold to a citizen, the officers of the customs were enabled, by a knowledge of the fact, to exact the foreign duties in future, should no application be made for a new registry.

I am, upon the whole, of opinion that the appellants are not liable for higher duties than are payable by vessels of the United States; and, consequently, the judgment of the district court must be reversed.

Judgment reversed.

This judgment was affirmed by the supreme court, 4 Cranch [8 U. S.] 48.